510-0304. Counsel, please. Good morning. May it please the Court. My name is Mary Massa, and I represent the employee appellant in this case, Roger Crites. This is an arising-out-of-case. The arbitrator, who was affirmed by the Commission in Jarrity, found... Keep your voice up, please. Yes, Your Honor. The arbitrator, who was affirmed by the Commission in Jarrity in this case, found that the petitioner's description of the incident was that he was sitting in the crane operator's chair, and when he turned to the left and stepped down, which was a distance of a foot or less, he felt a sharp pain in his back. And the arbitrator then found that this action presented no greater risk to the petitioner than to which the general public is exposed, and so did not constitute an accident arising out of and in the course of the petitioner's employment. This is a neutral risk case, and in such cases, if the employee is able to show that his risk, he was exposed to a risk greater than other persons, the general public, then the accidental injury is also said to arise out of employment, and it is a compensable case. Getting out of a truck seat or turning to get out of a seat in a car, a risk that's greater than the general public is exposed to every day after driving a vehicle. And, Your Honor, that's one of our main contentions in this case. This was not like getting out of a truck or getting out of a vehicle. This crane cab that he was in for his workday is suspended from the ceiling of the respondent's plant. He has to actually take a ladder up to get into the cab. The cab itself is a confined space, only three feet wide in length, and has operators' controls as well as a pedestal that's about a foot high and a seat where he sits during the course of his day. He was at the end of his day and was trying to extricate himself from this crane cab at the time that he injured his back. It wasn't just merely an action of sitting there and turning to the left and standing down. As he described it in his testimony, Your Honor, he said he had to pull himself forward, hang onto the controls, slide down a little bit, put his right hand on the armrest of the seat, swing his body while lowering his right leg down to the floor of the crane, a distance of approximately one foot. His left foot remained on the pedestal platform that the seat was on while he was moving his right leg down, while he was dismounting, if you will, and that's when he felt the sharp pain in his back. So what was the mechanism? What caused his injury? Well, this is the sole medical evidence in this case, sole medical opinion in this case is from Dr. Coy. He was of the opinion that the employee's workday, where he was picking up these 100,000 pound loads of steel, had 300 loads of steel that he would do in one workday or one work overnight, which was the case because he was on midnights at that time. But in any event, Dr. Coy said that when he would drop those loads, there was an extreme amount of vibration which caused the discs in his back to swell. And when he twisted, as he gave in history to Dr. Coy, when he twisted his back to get out of the cab, that twisting action exacerbated the swelling in the discs, and that's what caused him the pain. Is this the same Dr. Coy who opined that the injury was insidious? Dr. Coy did mention that it was insidious. Does that sort of contradict the finding that it was an act of turning itself that gave rise? Well, not according to how Dr. Coy explained it. But he did recall the employee explaining quite frankly and quite consistently as he testified at trial that he did also have the twisting motion. But he also did let him know about the vibrations that he felt every time he had to drop a load of steel. So did we have the doctor connecting the vibrations to some condition? The doctor said that the vibrations caused the discs to swell, and then the twisting motion exacerbated that swelling of the discs, and that was borne out on the MRI that was done four days later. Maybe I'm wrong here, but if you have evidence of vibrations causing swelling of the discs, wouldn't that be the direction you'd go to to say that your exposure is greater than that of the general public? Where it's just the getting out of the seat and that, that's like getting out of an SUV. Well, I think that adds to the whole genre of what the arbitrator should have looked at. Why wouldn't that be the primary thrust? Well, Your Honor, the case was presented as the back being injured as he stepped out of the case. So I can only say how it was presented at trial. In my argument here to you and before the commission as well as before the judicial, before the circuit court, what our contention is that the arbitrator wasn't looking at the, or wasn't isolating and identifying the distinctive characteristics of the employment, and of course those vibrations that he was exposed to that basically set his back up for exacerbation when he did the twisting motion to get out of the cab, the totality of all of that I think should be considered when you look at whether the risk is greater than the risk to the general public. This court has recently looked at an arising out of case. I think the opinion was issued in February of this year, which was after all the briefs were filed in this case. The Metropolitan Water Reclamation case is the one I'm referring to. And in that case, the court said that in neutral risk cases, they're compensable only where the employee was exposed to a risk to a greater degree than the general public. But here is another thing that it said that I think is helpful in this case and should have been utilized by the arbitrator when he made his findings. The court said, or this court said, such an increased risk may be either qualitative, such as some aspect of the employment which contributes to the risk, or quantitative, such as when the employee is exposed to a common risk more frequently than the general public. Now in the Metropolitan case, it was a quantitative risk rather than a qualitative case, which I believe it is in this case. So if you look at whether there is some aspect of the employment which contributes to the risk, I think, yes, you do look at the fact that he was exposed to the vibrations which set his back up with this preexisting swelling disc, swelling disc in his back, as Dr. Coy opined. And then when he had to do his contortions and twist his back in order to step out of the cabin and take the ladder down to the ground floor, that is how he was injured. Who is Dr. Lopardis in all of this? Dr. Lopardis, I believe, was the petitioner's family doctor. Is there some evidence in the medical records of Drs. Lopardis and Coy that you've been referring to that the claimant had some back problems before unrelated to his work? I'm not exactly familiar with this, but as I recall, if he had any preexisting back problems, they were so far removed from the proximity of this accident that they weren't related. There wasn't any medical opinion that the reason that he was having back problems was a continuing circumstance. So this was not an intervening cause. Well, didn't the arbitrator specifically find that the claimant's claim that he had never suffered previous back pain or problems was contradicted by the medical records of Lopardis and Coy? Well, just the mere fact that someone had prior back problems maybe goes to the credibility of the petitioner if he fails to recall that he did have some back complaints. But if you look at when the back complaints were made and if they are not sometime in close proximity to the accident we have here at hand, you're not looking at an ongoing back problem for which he was continually treating with Dr. Lopardis or with anyone else. So it's our contention that the arbitrator did not sufficiently isolate and identify the distinctive characteristics of the employment in this case and in so doing wrongfully ruled against the claimant on his claim. I cited a couple of cases in my brief that I think are more on point. The O'Fallon school district case, there was a teacher who I believe at the arbitration level was found to be subjected to a neutral risk. That was overturned at the appellate court where they found that when she had to turn to chase down students who were running in the hall which was part of her job duties as a teacher during the passing periods between classes and she turned suddenly and twisted her back and had a back injury. That was found to be a risk that was greater than the general public would have. Right, because she was specifically ordered to pursue a run down a running student. That's not something that every teacher necessarily has to do. Here he's in the cab of the vehicle turning. It wasn't a swivel type of a seat though. This was just a mere stepping down. Turning your seat so that you could step down one foot. Like stepping down off the curb was in the Caterpillar case. This was a confined space. This was a seat that didn't swivel. This was a cab that was three feet wide and had a control panel that the petitioner had to hold onto just to move himself closer to the exit. He had to hold onto the seat. He had to twist his body. He had to put one foot on the pedestal and then step down with the other foot. This was not just stepping out of a vehicle or not just turning in his chair and stepping down. That's our position, Your Honor, that this is more than what we had in the Caterpillar case where someone's just stepping down off of a curb. More than just stepping out of a vehicle or a pickup truck that somebody might have. This is a confined space. It required contortions as Commissioner Gore noted in his dissent for the petitioner to even be able to remove himself from the crane cab. And for that reason, we would ask the justices to reverse the commission and to remand the case for findings on the awards that the petitioner was seeking in this case, that being TTD, medical, and permanency. Thank you, Counsel. Counsel, please. If it pleases the Court, Ms. Massa, my name is Tom Kergeleis, and I represent the employer respondent, U.S. Steel, in this matter. No matter how we look at this case, the issue, in fact, is whether or not the commission's decision was against the manifest way to the evidence. This is a factual determination, and the commission is that prior effect and not the subsequent reviewing courts, although the arbitrator and the commission both found that the activities of the petitioner did not constitute an accident as he was not exposed to a risk greater than the general public, and the Circuit Court of Madison County confirmed that commission finding. The issue really is solely whether or not there was credible evidence in the record to sustain the commission's finding. I would suggest to you that the record is more than enough to substantiate that finding of the commission. The factual question was whether or not the activity engaged in by the petitioner did constitute a risk greater than the general public. While opposite counsel likes to talk about the confined area of the cab, the mechanism the petitioner used to get down, the truth of the matter is that all of his testimony and the documentary evidence and medical records and so forth all indicate that there's no indication of any injury, no complaints of any pain, any indication that the man was hurt until he took the step down. Well, what about her argument that this particular vehicle, I mean, if this is somebody who's in a regular passenger vehicle, you know, then maybe it's a little clearer. She seemed to be suggesting that you almost had to be sort of a contortionist to get in and out of this particular cab because of the way it was structured. It's not your average type vehicle that you're going to be alighting from that we envision. So what about her argument that this turns on the very specific nature of the interior of this vehicle? The evidence, assuming that that is correct, and this petitioner was a slightly larger than average gentleman, would have those same difficulties getting out of a theater seat, a car seat, or any other type of seat. And the critical point, in my opinion, is that there were no complaints, no indication of injury when doing all this. The indications of injury took place when he stepped down to one step, which the testimony was approximately one foot high. There's no indication in the record that there was any defect in that step that caused the problem. There's no indication there was any defect in the platform or any other part of the equipment. The evidence is that the injury occurred when he took that step down and that the injury did not occur if he had to go through some contortions to get out of that seat, which I would submit to you were no different than getting out of any other seat for a gentleman his size. The record also and the application for adjustment of claim filed by the petitioner in this matter is a single incident, and it specifically alleges that the injury occurred when he stepped down that one step. There's no allegation in the application of any other problem. What about the doctor applying vibrational disc enlargement, exposure to vibration? Did he link up anything, susceptibility to this type of injury because of that? No. And the doctor's records, that was in response to a hypothetical question. The doctor's records were clear that Dr. Coy believed that the onset of the condition was insidious in nature. The evidence further indicates that the gentleman, after experiencing pain, taking that one step down, waited for a moment, that dissipated, cleared, he finished, went home, and he did not have the problems that led him to the doctor. He didn't go straight to the doctor from that incident. He went home, and when he reported to the doctor the next day, he indicated that the pain reoccurred after he arose from sleep the night before. So the doctor opined in the records, which I would suggest to you are the most credible, that the onset of the condition was insidious in nature and not linked to vibration or, for that matter, even the stepping down. Is there any evidence of preexisting back problems that have any bearing on the analysis, sir? There is evidence of some preexisting back problems. Frankly, I don't believe that they are reflective of anything than perhaps a chink in the credibility armor of the petitioner. So you're not hanging your head on it? No. There was nothing there to suggest that it was anything of that nature. The qualitative or quantitative argument doesn't matter in this case either because, one, there's no indication that he had to go more steps than the general public did or anything like that, and there's nothing qualitative about the case because there's no evidence that there was a defect in the equipment used by the petitioner. A decision different from that which the Commission reached is not clearly evident from a review of the records. The conclusions of the Commission are clearly rational, they're clearly supported by the evidence in the record, and they're the same conclusions that both the arbitrator and the circuit court arrived at. The act of stepping down one step is not a risk greater than the general public, and it is the Caterpillar case. It is nothing different than that. The case before Caterpillar, partly, which I believe Caterpillar overturned, although it's a little difficult to tell, but those two cases in combination emphasize my point here that this is a factual question, whether or not the step down there was an accident, and that the factual determination by the Commission cannot be overturned. Relative to causal connection in these arising-out-of cases, causal connection and arising-out-of are always a little confusing in nature, but I would point the Court to the records of Dr. Coy, which I believe are determinative, when he notes that the condition appeared insidiously. For those reasons, we would ask that the Court find that the Commission's decision was not against the manifest weight of the evidence and affirm the finding of the circuit court. Thank you. With regard to my client's stature, it should be noted that employers take their employees as they are, and he was obese, he was 300 pounds, and it may have impacted on the difficulty that he had extricating himself from this crane cab. But nonetheless, his testimony is that he had to go through quite a bit of contortions in order to get himself down from this crane cab, and it was more than just turning to the left and stepping down. It required a twisting motion of his back, which he did relate to Dr. Coy, and which was a part of Dr. Coy's opinion. And if you look at causation, that act of twisting his back to step down only has to be a cause in his condition of well-being. If he had this swelling of the discs that resulted from the vibrations he was exposed to with dropping the loads of steel, that may have also been a part of his back problem. But the act of twisting, which Dr. Coy said caused his problem, also caused his problem, was sufficiently set forth in the medical causation testimony. And I would also note for the court that Dr. Coy did, in addition to his physical exam, where he noted that the petitioner was complaining of radicular symptoms down into his right thigh, he had objective signs of lumbar disc pathology. He had diminished deep tendon reflexes, an absent Achilles, ankle jerk reflex, a diminished left patella, knee jerk reflex, diminished sensation along the L4 and L5 dermatomas, and that was consistent with the MRI that was performed four days later, which showed postural lateral disc protrusions both at L3-4 and at L4-5. With regard to the presentation of the back symptoms, there was no ongoing condition of back problems prior to this accident. After this accident, he has this pain, radiating pain. He has these diminished ankle reflexes. He testified that he could barely even get out of bed. If you look at this just from a chain of events standpoint, he was able to do his job as a crane operator, climbing up those stairs and getting in and out of the thing without any restrictions. He had no restrictions whatsoever at that job before this happened and was not regularly seeking treatment for his back before this happened. So just based on chain of events, this also supports the causation opinion of Dr. Kaur, we believe, in this case. And unless there are any further questions for me, I thank you for your time this morning and ask for reversal of the commission. Thank you.